IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| INTERMOUNTAIN ELECTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | **ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURSIDICTION AND GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** <br><br> Case No. 2:20-cv-00501-JNP <br><br> District Judge Jill N. Parrish |

## INTRODUCTION

Before the court is a Motion to Dismiss (ECF No. 26) filed by the United States of America (the "Government" or "Defendant"). Intermountain Electronics, Inc. ("Intermountain" or "Plaintiff") instigated this suit after the IRS disallowed its claim for a tax refund. The Government moves to dismiss Intermountain's action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, the court DENIES the Government's Rule 12(b)(1) Motion and GRANTS its Rule 12(b)(6) Motion.

## BACKGROUND

Intermountain is a Utah corporation that "designs, engineers, manufactures, and services custom electrical distribution and control equipment for underground and surface mining" and various other applications. ECF No. 2 ¶ 7. In 2013, Intermountain hired AlliantGroup, LP ("AlliantGroup"), a firm that assists businesses to claim state and federal tax credits, including the

federal credit for increasing qualified research expenditures ("R&D Credit") provided for under 26 U.S.C. § 41.[1]

In 2014, after receiving a report from AlliantGroup that alleged to have evaluated Intermountain's eligibility for the R&D Credit in prior years, Intermountain filed amended tax returns for tax years 2010 and 2011, along with a Form 6765[2] for each year. In the amended returns, Intermountain claimed R&D credits in the amount of $786,503[3] for 2010 and $966,839 for 2011, totaling $1,753,342.

As a result of the amended returns, the IRS initiated an examination to determine Intermountain's eligibility for the credits. Over the course of an approximately five-year examination, the IRS requested and received substantial amounts of information from Intermountain. The IRS ultimately disallowed Intermountain's claim for credits for both years, concluding both that much of the work performed by Intermountain employees did not constitute qualified research and that Intermountain failed to adequately substantiate its claims through the evidence it provided to the IRS. *See* ECF Nos. 26-3, 26-4, 26-6.

On July 14, 2020, Intermountain brought the present suit, asserting a single cause of action: Recovery of Illegally Collected Tax. It alleges that the IRS erred in disallowing its claims for credit and seeks a tax refund in the amount of $1,753,342. The Government now moves to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that this court lacks

---

[1] This tax credit is described in greater detail below.
[2] This is the form prescribed by the IRS for taxpayers seeking the R&D credit.
[3] This amount resulted in alleged carrybacks to tax years 2005, 2006, and 2008.

subject-matter jurisdiction over the suit and that Intermountain has failed to state a claim upon which relief may be granted.

## LEGAL STANDARD

### I. Subject-Matter Jurisdiction (Rule 12(b)(1))

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action from federal court for lack of subject-matter jurisdiction. FED R. CIV. P. 12(b)(1). When a party moves to dismiss an action under Rule 12(b)(1), it "mount[s] either a facial or a factual attack. A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (citations omitted). "A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* The court may consider relevant evidence in adjudicating a factual attack on subject-matter jurisdiction. *Id.*

### II. Failure to State a Claim (Rule 12(b)(6))

Dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a plaintiff fails to state a claim upon which relief can be granted. When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusions and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

# DISCUSSION

## I. Subject-Matter Jurisdiction

As explained in greater detail below, the Government moves to dismiss this case for lack of subject-matter jurisdiction because, it argues, it did not waive its sovereign immunity. It argues that Intermountain failed to properly file its claim for refund with the IRS and that this deprives this court of jurisdiction. Intermountain contends that it met the requirements for a properly filed claim and that even if it did not, the IRS waived the claim requirements and thereby waived its sovereign immunity. The court first outlines the Research and Development credit Intermountain seeks, along with the statutory and regulatory requirements for filing a proper claim for credit, then addresses the contentions of the parties.

### A. R&D Tax Credit

26 U.S.C. § 41 allows taxpayers to claim a tax credit for qualified research expenses that exceed the amount they spent during an earlier comparison period. This credit (the "R&D credit") is equal to twenty percent of the difference between a taxpayer's qualified research expenses from the year in which the credit is claimed and the "base amount"—the qualified research expenses from the comparison period. 26 U.S.C. § 41(a). Qualified research expenses include wages paid to employees who perform or supervise qualified research. *Id.* § 41(b). Qualified research includes research and development in the experimental or laboratory sense, research that is undertaken to discover information that is technological in nature and that is intended to be used in the development of a new or improved business component of the taxpayer, and activities that constitute elements of a process of experimentation for a specified purpose. *Id.* § 41(d); Treas. Reg. § 1.174-2(a)(1).

B.      Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (citation omitted). A waiver of sovereign immunity "must [ ] be 'unequivocally expressed' in the statutory text" and it must be "strictly construed . . . in favor of the sovereign." *Id.* at 261 (citations omitted).

Congress, by statute, has waived the Federal Government's sovereign immunity from tax refund suits only when certain conditions are met. Specifically, no suit for a refund may be brought in federal court unless a claim for a refund has first been filed with the Secretary of the Treasury in accordance with Treasury Regulations:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). The Treasury Department has promulgated regulations under this statute that require a taxpayer to outline with specificity the factual bases upon which her claim for refund is based:

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. <u>The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.</u> The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

Treas. Reg. § 301.6402(b)(1) (emphasis added).

5

In short, the Government's waiver of immunity for refund cases, such as the one before the court, is conditional upon a taxpayer's duly filing a claim for refund with the Treasury Department. To be duly filed, a "claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." *Id.* When a taxpayer complies with these regulatory requirements, she gives formal notice to the IRS that she is making a claim for a refund. If a taxpayer fails to meet this regulatory requirement—i.e., if she fails to give formal notice—then federal courts normally lack jurisdiction to hear her claim. *See Green v. United States*, 880 F.3d 519, 532 (10th Cir. 2018); *Quarty v. United States*, 170 F.3d 961, 972 (9th Cir. 1999) ("Compliance with these specificity requirements is a prerequisite to subject matter jurisdiction over a claim for a refund.").[4]

While failure to provide formal notice normally deprives federal courts of jurisdiction over a taxpayer's refund claim, there are two further avenues through which a taxpayer may have her claim heard in federal court: (1) she may give informal notice of her claim for refund to the IRS or (2) the IRS may waive the specificity requirements of formal notice by investigating and adjudicating the claim on the merits.

Informal notice is a judicially-created doctrine that allows a taxpayer to make a claim for refund even if she has not met the specificity requirements of formal notice. *See Linton v. Comm'r of Internal Revenue,* 764 F. App'x 674, 680–81 (10th Cir. 2019) ("[T]he Supreme Court has held that 'a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the

---

[4] Closely related to this doctrine is the "substantial variance" doctrine. The substantial variance doctrine "bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Green*, 880 F.3d at 532. Courts may not consider facts that a taxpayer failed to present to the IRS in connection with her claim for refund.

Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by' the taxpayer's later amendment of the claim." (quoting *United States v. Kales*, 314 U.S. 186, 194 (1941))). While courts have articulated the components of an informal claim differently, courts generally agree that an informal claim must (1) be made in writing; (2) place the IRS on actual or constructive notice that the taxpayer seeks a refund for a specific year; and (3) describe the legal and factual basis for the refund. *See, e.g., id.; Mobil Corp. v. United States*, 67 Fed. Cl. 708, 716 (2005); *PALA, Inc. Emps. Profit Sharing Plan & Tr. Agreement v. United States*, 234 F.3d 873, 877 (5th Cir. 2000).

Finally, the IRS waives the specificity requirements of formal notice when it investigates and adjudicates a refund claim on its merits. *See Angelus Milling Co.* v. *Comm'r of Internal Revenue*, 325 U.S. 293, 297 (1945) ("If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it."); *Quarty v. United States*, 170 F.3d 961, 973 (9th Cir. 1999) ("The government may waive compliance with the specificity requirements of Treasury Regulation § 301.6402–2(b)(1) if it has investigated the merits of a claim and taken action upon it." (citations omitted)). To establish that the government has waived compliance with the regulations' specificity requirement, "[t]he showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim." *Angelus Milling*, 325 U.S. at 297.

In short, for Intermountain to have its suit heard in federal court, it must have either satisfied the requirements for formal notice, satisfied the requirements for informal notice, or it

must show that the Government waived its notice requirements. The Government argues that Intermountain has done none of the above; Intermountain contends that it has done all three. The court first touches on the issue of formal notice, as this topic represents the majority of the Government's argument in its Motion to Dismiss, but ultimately concludes that the IRS waived the specificity requirements.

    C.    Formal Notice

The Government argues that Intermountain falls short of the formal notice requirements because it failed to provide the IRS with the information necessary to apprise it of the factual bases underlying its claims. Specifically, the Government asserts that (1) Intermountain did not specify, upon request from the IRS, what process of experimentation was performed on what business component; (2) Intermountain did not specify which employees performed such processes or how much of their time they spent on such processes; and (3) Intermountain did not submit evidence from which the base amount—the amount necessary to calculate the increase in qualified expenses for the tax years in question—could be calculated. Instead, Intermountain explained that it did not employ a contemporaneous time-tracking system during the relevant tax years and that it simply estimated, after the fact, how much time employees spent on qualifying activities, without explaining what those qualifying activities were. *See* ECF No. 26-7 at 15–16. The Government argues that by failing to provide this information, Intermountain did not "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402(b)(1).

Intermountain contends that it complied with the formal notice requirements by filing the prescribed forms for 2010 and 2011—its Amended Returns (Form 1120X) along with the other necessary forms, including Form 6765, which provides computations for the R&D tax credit. The

Government argues that these forms are necessary but not sufficient to properly file a claim for refund.

There is some tension, it appears, between the various forms of guidance promulgated by the IRS. On the one hand, Treasury Regulations, as explained above, require that a taxpayer claiming a refund "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402(b)(1). On the other hand, the IRS promulgates a form, Form 6765, and instructs tax payers to use this form to "figure <u>and claim</u> the credit for increasing research activities (research credit) . . . ." *See* IRS Form 6765, available at www.irs.gov/Form6765 (emphasis added). Form 6765 contains no instruction to provide additional facts underlying the calculations, nor does it contain any space where a taxpayer might do so. *Id.* Furthermore, Treasury regulation on this matter instructs:

> "A properly executed individual, fiduciary, or corporation original income tax return or an amended return (on 1040X or 1120X if applicable) <u>shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511</u> for the amount of the overpayment disclosed by such return (or amended return)."

Treas. Reg. § 301.6402-3(a)(5) (emphasis added). *See also Fearis v. Comm'r of Internal Revenue*, 548 F. Supp. 408, 410 (N.D. Tex. 1982) ("In the normal course of events [the filing of the tax return itself] will generally meet the specifications of [Section] 301.6402-2(b)(1).").

In short, the Treasury indicates in one place that taxpayers must set forth in detail the factual grounds for their claimed refund in order to properly file a claim for a refund, and in other places indicates that filing a return, or amended return, along with Form 6765, suffices as a claim for

9

refund.[5] The Government argues that these forms are necessary but not sufficient to duly file a claim for refund, asserting that "it is possible that a refund claim <u>both</u> be filed on the correct form <u>and</u> that the refund claim 'set forth in detail each ground upon which a credit or refund is claimed . . . .'" ECF No. 28 at 6 (quoting 26 Treas. Reg. § 301.6402(b)(1)). Apparently, the Government is suggesting that in order to duly file a claim for this sort of refund, the taxpayer either needs to *sua sponte* submit along with Form 6765, through some unspecified means, all supporting factual evidence to support its claim for refund, or it must endure the IRS's complete investigative process, through which it submits requested evidence, before the claim can be considered duly filed. The Government's approach would appear to place quite a heavy burden on taxpayers, especially in light of the confusing guidance described above. Ultimately, the court need not decide the issue of formal notice because, as explained below, it concludes that that the Government waived the specificity requirements of Section 301.6402(b)(1). [6]

D. Waiver

As explained above, the Supreme Court has held that the IRS waives the regulatory specificity requirements when it investigates the merits of a claim and takes action on it. *Angelus Milling*, 325 U.S. at 297. Intermountain contends that by investigating Intermountain's claims over

---

[5] In other words, the Treasury instructs that filing these forms alone satisfies the requirements of Section 301.6402(b)(1).

[6] The Government cites on several occasions the Tenth Circuit's decision in *Green* for the proposition that this court lacks subject-matter jurisdiction over Intermountain's claim because Intermountain failed to provide the information described above. But in *Green,* the court applied the substantial variance rule to bar the plaintiff in that case from raising a legal theory at the summary judgment stage that it had not raised in its refund claim with the IRS. *Green*, 880 F.3d at 532. Thus, while *Green* does stand for the general proposition that courts may not consider matters not raised in the claim for refund with the IRS, it has little bearing on the issue before the court in this case.

a five-year period and authoring memoranda denying the claims, the IRS waived the formal notice requirement. The Government responds that it did not waive the requirements because it did not deny Intermountain's claims on their merits; rather, it argues that it denied the claims based on the lack of information submitted by Intermountain. It quotes the "Appeals Case Memorandum" (ECF No. 26-6) denying Intermountain's 2010 claims, in which the IRS stated that "documentation to substantiate that the employees were performing research activities is extremely lacking" and that there was "no indication of how [employees'] time is allocated between performing research activities and other work." ECF No. 26-6 at 16 (Document p. 15). It also cites the Form 886-A "Explanation of Items" ("Explanation") prepared by IRS Mining Engineer William Greer ("Greer") (ECF Nos. 26-3 & 26-4)—a document that explains the disallowance of Intermountain's 2011 claims—which states that "[t]he nexus between the estimated hours performing research and any qualified research has not been provided to prove the claimed qualified research" and that Intermountain "failed to show the relation between hours worked and the related qualifying R&E costs in the experimental or laboratory sense." ECF No. 26-2 at 17 (Document p. 16).

The court agrees with Intermountain. The Supreme Court has explained that for the IRS to waive the formal notice requirements, "[t]he showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim." *Angelus*, 325 U.S. at 297. Circuit courts hold this requirement to bet met where the IRS investigates a refund claim and denies it on the merits. For example, in *Harper v. United States,* 847 F. App'x. 408 (9th Cir. 2021), the Ninth Circuit confronted facts nearly indistinguishable from those at bar here. After the taxpayer submitted a claim for a refund, based on the R&D credit, the IRS conducted a four-year investigation in which it "targeted its questioning and document requests specifically on determining Taxpayer's eligibility for the increased research

11

credit" and ultimately decided that the taxpayer "[had] not shown [it was] entitled to the claimed refund." *Id.* at 410. The *Harper* court held that the IRS's actions constituted waiver of the specificity requirements, noting that the IRS "accept[ed] Taxpayer's properly filed Forms 6765 and substantively examin[ed] Taxpayer's specific claims." *Id. See also, e.g., Goulding v. United States,* 929 F.2d 329, 332–333 (7th Cir. 1991); *United States v. Henderson Clay Prods.*, 324 F.2d 7, 17–18 (5th Cir. 1963); *cf. Computervision Corp. v. U.S.*, 445 F.3d 1355, 1367–68 (Fed. Cir. 2006) (recognizing waiver rule but holding that taxpayer could not avail itself of rule where IRS considered claim after the running of the limitations period).

As in *Harper*, here, the IRS conducted a lengthy investigation into Intermountain's refund claim, during which it made numerous requests for further information intended to determine Intermountain's eligibility for the R&D credit. The investigation lasted over five years; during this time, Intermountain responded to nine IRS requests for information. As explained above, the Government argues that the IRS did not examine the merits of the claim or reject the claim on its merits; rather, it contends that the IRS rejected the claim because it lacked the necessary information to determine whether the requirements for the R&D credit were met. But while the IRS ultimately may not have been satisfied with the information provided by Intermountain, it is clear not only that it understood the factual basis for Intermountain's claim, its disallowance was based on the merits of the claim.

This much is evidenced by the documents in which the IRS explains its disallowance of the claimed credits, both the Explanation and the Appeals Case Memorandum. The Explanation contains a ten-page section that outlines Intermountain's position regarding why it deserved the R&D credit. *See* ECF No. 26-3 at 4–14 (Document pp. 3–13). This section of the Explanation evinces that the IRS understood the factual grounds underlying Intermountain's claim. And in the

subsequent section of the Explanation, Greer provides several merit-based justifications for ultimately denying the claim, including the following:

- "The substantiation that was provided [by Intermountain] is the use of skills and knowledge acquired as a professional to determine the likely best choice among several available or the optimal design. That is not experimentation." ECF No. 26-3 at 16–17.
- "The documentation that has been provided by IE does not support their claim that research and development costs in the experimental or laboratory sense has been performed on the ten projects [sic]." *Id.* at 17.
- "In my opinion, the entire package of construction and equipment of the type built and claimed by IE would not qualify for the R&E credit." *Id.* at 21.
- "These costs [incurred by Intermountain] (i.e., designs, installation, upgrades, and maintenance costs) are attributable to the improvement of property or are an element of construction . . . . Thus, such costs are disallowed under Treas. Reg. § 1.174-2(b)(1) and § 1.174-2(b)(4)." ECF No. 26-4 at 1.
- "While IE claims that the business components were the unique and non-repeatable finished design for each of the projects under contracts, Examination determined that IE's business components were the projects themselves, which are finished products and not research." *Id.* at 5.
- "Based on the information received from the audit . . . , there may have been some qualified research in the early electrical design of the IE projects[,] but most of the construction was . . . either a process of integrating known capabilities or appear to be fairly routine or were small in comparison to the overall project." *Id.* at 16.

While Greer notes on a few occasions that Intermountain failed to submit documentation sufficient to substantiate some of its claims, this does not mean that the IRS did not examine Intermountain's claim on the merits. To the contrary, the quoted language above demonstrates that the IRS knew the factual basis for Intermountain's claimed credits and disallowed them based on the facts uncovered during its investigation.

The "Appeals Case Memorandum" prepared by the IRS further supports this conclusion. The Appeals Officer assigned to review Intermountain's claims for 2010, Debbie McFaul, like Greer, reached conclusions based on the merits of Intermountain's claims. *See, e.g.*, ECF No. 26-6 at 12 (Document p. 11) ("While Taxpayer and AG contend there were costs to eliminate design uncertainties in each of the 10 projects analyzed for 2010, these projects do not meet the test. The costs to build these components were not research and development costs in the experimental or laboratory sense."). The Appeals Case Memorandum also notes that the IRS offered to pay Intermountain 25% of the amount it sought for tax year 2010. *Id.* at 2 (Document p. 1).

In short, Section 301.6402(b)(1) declares that "[a] claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit." Here, it is clear that the IRS *did* consider Intermountain's claim for refund and thereby waived the specificity requirements of Section 301.6402(b)(1). It indicated as much when it stated the following in a letter after considering Intermountain's protest:

> We considered your protest and the evidence and arguments submitted in support of the above claim for refund of [tax and/or penalty]. We can't allow the above claim for an adjustment to your [tax and/or penalty] for the following reasons:
>
> Your claim for refund under IRC section 41 for Research and Development Credit has been denied. Your activities are not considered research and development under the four part test of IRC section 74.

> We based our decision on the provisions of the IRS laws and regulations. This letter is your legal notice that we fully disallowed your claim.

ECF No. 2-2 at 2.[7] Based upon the foregoing, the court concludes that the IRS waived its specificity requirements by considering and rejecting Intermountain's claims on the merits. The court may therefore exercise subject-matter jurisdiction over Intermountain's claims.

## II.   Failure to State a Claim

The Government also contends that Intermountain's Complaint fails to state a claim upon which relief may be granted. It argues that Intermountain, in its Complaint, merely parrots the statutory requirements for the R&D credit and asserts that it met them, without alleging particular supporting facts. The Government further contends that Intermountain failed to even assert that it met all of the requirements for the R&D credit; Intermountain failed to make any allegations regarding the base amount or any figures that would allow the calculation of a base amount. The Government argues that for these reasons, the Complaint falls short of the *Twombly/Iqbal* standard enumerated above. Intermountain responds that it does identify in the Complaint the facts giving rise to its claim for refund, and that the Government has notice of the base computation because it was included on Intermountain's Form 6765.

The court agrees with the Government. While the standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Intermountain's Complaint is

---

[7] The letter further stated that Intermountain could "file suit with the United States District Court having jurisdiction or with the United States Court of Federal Claims" to recover "any tax, penalties, or other moneys shown on this disallowance form." *Id.* While not dispositive of the waiver or jurisdictional issues before the court, this indicates that the IRS viewed its investigation as complete and its disallowance as a final decision on the merits.

replete with such labels and conclusions; factual allegations are sparse. For example, Intermountain states in the "General Allegations" section of its Complaint:

> During [tax years 2010 and 2011], Intermountain Electronics, in the carrying out of its business, engaged in qualified research activities for the development of new and improved business components.
>
> Intermountain Electronics' development of new and improved business components was intended to improve the performance, reliability, or quality of business components, or to provide a new or improved function.
>
> During Intermountain Electronics' development of each business component, substantially all of the involved activities and [sic] constituted a process of experimentation.

ECF No. 2 at ¶¶ 8–10. It asserts that the IRS erred in disallowing its claim, but does not state in what way the IRS erred. *Id.* at ¶ 22. Finally, under its sole cause of action, Intermountain simply asserts that it is "entitled to the full amount of the claimed tax refund." *Id.* at ¶ 23.[8] Intermountain's Complaint is a paradigm example of the sort of complaint declared unsatisfactory by the Supreme Court in *Twombly* and *Iqbal.* Accordingly, the court GRANTS the Government's Motion to Dismiss for failure to state a claim.

In its Response, Intermountain requests leave to amend its Complaint if the court finds it failed to state a claim for relief. Because the court does conclude that the Complaint failed to state a plausible claim for relief, it now grants Intermountain's request for leave to amend. In its amended complaint, Intermountain must include sufficient factual matter to advise the court and the Government of the nature of its claim. This should include the facts underlying its belief that it is entitled to a refund, such as the activities it believes constituted qualified research activities.

---

[8] Intermountain did not attach Form 6765, or any other documents besides disallowance letters from the IRS, to the Complaint.

The amended complaint should also articulate the ways in which the IRS improperly denied Intermountain's claim for refund. Intermountain may file an amended complaint on or before August 2, 2021.

## CONCLUSION AND ORDER

The court HEREBY ORDERS as follows:

1. The Government's Motion to Dismiss Intermountain's Complaint for lack of subject-matter jurisdiction is DENIED.

2. The Government's Motion to Dismiss Intermountain's Complaint for failure to state a claim for relief is GRANTED. The Complaint is DISMISSED WITHOUT PREJUDICE. Intermountain may file an amended complaint on or before **August 2, 2021**.

DATED July 16, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge